Filed 12/18/13  In re J.H. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>J.H.,<br><br>      Defendant and Appellant. | E057327<br><br>(Super.Ct.No. J245787)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Barbara A. Buchholz, Judge.  Affirmed as modified.

Sarita I. Ordonez, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Eric A. Swenson, Warren Williams and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant J.H. was made a ward of the juvenile court and placed on probation for one year after the court found true an allegation that he possessed a concealed handgun. J.H. challenges the court's order denying his motion to suppress evidence, specifically, the handgun and his statements admitting guilt. He also challenges three of his probation conditions. As discussed below, we affirm the trial court's order denying the motion to suppress, but order one of the probation conditions modified as described.

## FACTS AND PROCEDURE[1]

At approximately 6:45 p.m. on August 30, 2012, San Bernardino Police Officers Jason Heilman and Byron Clark were patrolling a high-crime residential area[2] in a marked patrol car, as part of their duties with the gang unit. Officer Heilman saw J.H. "running . . . in a full sprint" across the street 50 or 60 feet away, coming from between some apartment buildings. J.H. was wearing street clothes, as opposed to athletic clothes, and was alone. It was a typical hot August evening. J.H. was holding the front pocket of his hooded jacket so that it appeared there was something heavy in the pocket. Specifically, J.H. was holding the object "still like so it wouldn't move around. . . . that part of the hoodie was not moving. So, it was obvious there was something in there that he was holding from moving around." J.H.'s hands were outside the pocket, not inside. Officer Heilman could not see the shape of the object or any shiny metal, but he believed,

---

[1] The facts leading up to the detention and discovery of the handgun are taken from Officer Jason Heilman's testimony at the hearing on J.H.'s motion to suppress evidence. (Welf. & Inst. Code, § 700.1.)

[2] Officer Heilman described the area as "the projects."

based on his extensive experience and training, that J.H. was carrying a gun. J.H. looked in the officer's direction as he crossed the street. After Officer Heilman yelled at J.H. to "stop," J.H. again "looked in [Officer Heilman's] direction," but continued to run. Officer Heilman could not be sure if J.H. saw him. J.H. ran into the courtyard of an apartment complex across the street from where he had emerged. Officer Heilman lost sight of J.H. Officer Heilman did not recognize J.H. from any previous encounters.

Officer Heilman got out of the patrol car and followed J.H. on foot, while Officer Clark circled the block in the patrol car. Officer Heilman crossed another street and entered the courtyard of an apartment complex, about 200 or 250 feet from where the foot chase began. At some point, Officer Heilman found J.H. "kind of hiding against or standing against a wall to the back of an apartment." J.H. was "standing against the wall . . . as . . . close as . . . he possibly could, standing like kind of straight and very still." Officer Heilman approached J.H. and told him to get on the ground. J.H. did not comply and said he was just going to his girlfriend's place. Officer Heilman put J.H. on the ground and handcuffed him. Officer Clark arrived and started looking around. About 10 to 15 feet from where J.H. had been standing, Officer Clark lifted the top of a barbecue grill and found a loaded semiautomatic handgun inside. A woman came out from a nearby apartment and identified herself as J.H.'s girlfriend.

On September 4, 2012, the People filed a juvenile wardship petition under Welfare and Institutions Code section 602, subdivision (a), alleging J.H. committed felony possession of a concealed weapon by a minor. (Pen. Code, § 29610.) On September 7,

3

2012, J.H.'s counsel filed a motion to suppress evidence. On September 13, 2012, the People filed their opposition, to which J.H.'s counsel filed a reply on September 18, 2012. On September 19, 2012, the juvenile court held a hearing on the motion, after which it denied the motion. The court reasoned that a reasonable police officer considering the facts known at the time would have had a reasonable suspicion that J.H. was connected with some type of crime.

The contested jurisdictional hearing was held on September 26, 2012, at which the juvenile court found the allegation true. On October 11, 2012, the court made J.H. a ward of the court and placed him on probation, in his grandmother's home until October 11, 2013, subject to conditions. This appeal followed.

## DISCUSSION

### 1. The Detention Was Constitutional

J.H. argues the police had no reasonable suspicion to believe he was engaged in criminal activity because there were no specific and articulable facts to support such a conclusion. We disagree, because Officer Heilman testified that the factors that first drew his attention to J.H. and made him suspect J.H. might be involved in criminal activity were that J.H. was in a "full sprint" and appeared to be holding a gun while doing so. These factors alone provided reasonable suspicion to justify the detention.

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found,

4

the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

In determining whether a detention is legal, reviewing courts consider the totality of the circumstances. (*People v. Souza* (1994) 9 Cal.4th 224, 230-231 (*Souza*).) "'[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question.'" (*People v. Loewen* (1983) 35 Cal.3d 117, 123.)

The full array of specific and articulable facts that, considered together and based on his experience and training, caused Officer Heilman to detain J.H. are the following: (1) J.H. "sprinted" across a street, coming from between some apartment buildings and disappearing into another set of apartment buildings, without any particular nonsuspicious justification, such as playing a game with others or wearing athletic attire; (2) J.H. continued running after twice looking in the officer's direction, the second time after being told to "stop"; (3) J.H. was in a high-crime area known for gun violence; (4) J.H. had both hands on the outside of the front pocket of his hoodie jacket, worn on a hot

5

August evening, and appeared to be holding steady a heavy object in the pocket so it would not move around; and (5) after the foot chase, J.H. was found standing very still and flat up against a wall, in a manner that appeared intended to avoid detection.

The fact we find most persuasive and which, from Officer Heilman's testimony, appears key to the formation of his reasonable suspicion that J.H. might be involved in criminal activity, was the way J.H. appeared to be holding something heavy in his front jacket pocket so that it would not move around. Officer Heilman was an officer with the police department's gang unit with extensive experience, and had attended and taught numerous classes on recognizing and dealing with gang members. Officer Heilman testified he had "a lot of" on-the-job training, in which he learned to look for specific signs that indicate a person might be holding a gun. "Sometimes their movements, the way they're walking, if they're holding their waistband because maybe they have a pistol in their pocket or in their waistband they don't want to fall out, the way they react when they see the police drive by. . . ." In addition, Officer Heilman testified that "from my experience I know that when people carry guns on them in the streets, lot of times they will put it in that hoodie pocket to conceal it." We hold that Officer Heilman appropriately drew on his training and extensive experience with gun crime and how people hold and attempt to conceal guns when he concluded that J.H. might be holding a gun and running from criminal activity.

In addition, Officer Heilman testified that the area is known for narcotics and gun-related offenses, including some recent murders and a shooting. Officer Heilman further

6

stated that "[g]uns are very common over there." While a suspect's presence in a high-crime area is not by itself a fact justifying detention, it is a relevant factor and need not be ignored by police. (*People v. Huggins* (2006) 38 Cal.4th 175, 242.)

Like the suspect's presence in a high-crime area, flight from police does not, by itself, justify detaining a suspect. However, in conjunction with other suspicious circumstances, such as the ones present here (high-crime area, appearing to be holding a gun), such flight can help to create reasonable suspicion. (See *Souza, supra*, 9 Cal.4th at p. 239.) J.H. argues the evidence does not establish that he fled from police or even knew they were present. It is true that Officer Heilman testified that he had no way of knowing for sure whether J.H. actually saw him, either the first time J.H. looked in the direction of the patrol car, or the second time when he did so directly after Officer Heilman told him to "stop." However, we think it was reasonable for Officer Heilman to conclude, at that moment, that J.H. likely saw the black and white patrol car after looking in that direction twice, once while crossing the street and again after Officer Heilman yelled at him to stop, and deliberately chose to continue running away from the police.

These circumstances, that J.H. was running across a street at full speed in a high-crime area and was carefully holding a heavy object that, in the officer's considerable experience, could well be a gun, leads us to conclude that Officer Heilman reasonably suspected J.H. might be involved in criminal activity. We uphold the juvenile court's order denying the motion to suppress.

7

2. Conditions of Probation

J.H. also challenges the conditions of his probation that prohibit him from: coming within one block of a school, being in a courthouse, courthouse parking lot or courtroom without a subpoena, and being present in gang gathering areas. As discussed below, we affirm the imposition of these conditions, but order the courthouse condition modified as described to preserve J.H.'s right of access to court proceedings.

"Pursuant to Penal Code section 1203.1, the sentencing court has broad discretion to prescribe reasonable probation conditions to foster rehabilitation and to protect the public so justice may be done. [Citations.]" (*People v. Miller* (1989) 208 Cal.App.3d 1311, 1314.) While a probationer retains rights of privacy and liberty under the federal Constitution (*People v. Keller* (1978) 76 Cal.App.3d 827, 832, overruled on other grounds in *People v. Welch* (1993) 5 Cal.4th 228, 237), probation conditions may nevertheless place limits on constitutional rights if necessary to meet the goals of probation (*People v. Bauer* (1989) 211 Cal.App.3d 937, 940-941). Furthermore, as previously stated, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.]" (*People v. Lent* (1975) 15 Cal.3d 481, 486, fn. omitted (*Lent*).)

8

"Prohibitions against a variety of gang-related activities have been upheld when imposed upon juvenile offenders. [Citations.]" (*People v. Lopez* (1998) 66 Cal.App.4th 615, 624 (*Lopez*).)

Here, J.H. admitted to being a gang member. He had previous arrests for residential burglary, petty theft, and gun possession. Given that J.H. was an admitted gang member with a criminal history, the juvenile court could reasonably determine that his disassociation from gang-related activities was an "essential element of any probationary effort at rehabilitation because it would insulate him from a source of temptation to continue to pursue a criminal lifestyle. [Citations.]" (*Lopez, supra*, 66 Cal.App.4th at p. 626.)

A. *School and Courthouse Prohibitions*

Term 18 of J.H.'s probation requires that he "[n]ot be on any school campus or within a one-block radius of any school campus unless enrolled there, or with prior administrative permission from school authorities."

Term 24 requires that J.H. "[n]ot appear at any court building, including the lobby, hallway, courtroom or parking lot, unless he/she is a party, defendant or subpoenaed as a witness to a court proceeding."

J.H. argues these conditions of his probation violate both his First Amendment rights to freedom of association and movement and are not reasonably related to his offense under the test set forth in *Lent, supra,* 15 Cal.3d 481.

9

A probation condition which infringes on a constitutional right, such as a right to travel, is permissible where it is necessary to serve the dual purpose of rehabilitation and public safety. (*People v. Peck* (1996) 52 Cal.App.4th 351, 362 [Fourth Dist., Div. Two].) In this case, the school condition serves this dual purpose because it prohibits J.H. from approaching a school campus, and therefore juveniles, for purposes of recruiting children into his gang. Hence, this condition serves as a deterrent for J.H. to actively recruit on behalf of his gang at a convenient location, while protecting the children from being approached by J.H. The trial court, therefore, properly exercised its discretion in imposing this probation condition because it was reasonably related to J.H.'s future criminality. (See *People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 [even conditions that regulate conduct not in itself criminal are valid as long as they are reasonably related to the crime a defendant was convicted of or to any future criminality].)

Regarding the condition restricting J.H.'s presence near a courthouse, we also note that a probation condition that is not "sufficiently narrowly drawn" may be modified and affirmed as modified. (*Lopez, supra,* 66 Cal.App.4th at p. 629; see also *In re E.O.* (2010) 188 Cal.App.4th 1149, 1157.) We agree with the People, and with the court in *In re E.O.*, that this probation condition is overbroad because it applies to court cases that are not gang-related, and so unnecessarily restricts J.H.'s access to the courts. Therefore, we order the language of probation condition 24 to be modified to read as follows:

"You must not attend any gang-related court case unless at least one of these things is true:

10

"(1)  You are a party to the case.

"(2)  You or a member of your immediate family is a victim of the activity charged in the case.

"(3)  You are there to obey a subpoena, summons, court order, or other official order to attend.

"(4)  A party's attorney has asked you to testify or to speak to the court.

"In all other cases, you must stay at least 50 feet away from the entrance to any courtroom where you know there is a gang-related case going on."  (*In re E.O., supra,* 188 Cal.App.4th at p. 1157, fn. 5.)

### B.  *Gang Gathering Area*

Term 23 requires that J.H. "[n]ot be present in any area, which he/she knows to be a gang gathering area."  J.H. argues this condition is both unconstitutionally vague and infringes on his rights to travel and associate.  However, as the People argued at the disposition hearing, such language has been upheld by case law.  In *People v. Barajas* (2011) 198 Cal.App.4th 748, our colleagues in the Sixth District upheld a probation condition that the defendant not "visit or remain in any specific location which you know to be or which the probation officer informs you to be an area of criminal street gang-related activity."  (*Id.* at pp. 754-760.)  Such language withstands the constitutional challenges raised by J.H. because "[t]he knowledge condition suffices to give defendant fair warning of what areas to avoid and ensures that he will not be found in violation due to a factual mistake, accident, or misfortune."  (*Id.* at p. 760.)  In addition, as discussed

11

above with regard to the other two challenged probation conditions, some infringement of constitutional rights is permissible where necessary to serve the dual purpose of rehabilitation and public safety (see also *id.* at pp. 755-756), and we conclude that this condition is narrowly drawn enough to withstand J.H.'s challenge based on his constitutional rights to travel and associate.

### DISPOSITION

The language of probation condition 24 is modified as set forth above. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

HOLLENHORST
J.

KING
J.